

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

September 21, 1959

Honorable Robert S. Calvert      Opinion No. WW-706
Comptroller of Public Accounts
Capitol Station      Re: Applicability of H.B.
Austin 11, Texas      11, Chapter 23, 3rd
     Special Session, 56th
Dear Mr. Calvert:      Leg., to hotels.

By letter dated August 28, 1959, you have requested an opinion on certain questions dealing with the new hotel occupancy tax. Since your questions are numerous, each will be stated and answered individually.

Question No. 1: Is the character of accommodations taxed by the new act limited to sleeping rooms?

Answer: Article 23.02(a) of House Bill 11 provides:

"There is hereby levied a tax upon the cost of occupancy of any room or space furnished by any hotel where such cost of occupancy is at the rate of Two Dollars ($2) or more per day, such tax to be equal to 3% of the consideration paid by the occupant. . ."

Occupant is defined in the Act as:

". . .anyone, who, for a consideration, uses, possesses, or has the right to use or possess any room or rooms in any hotel under any lease, concession, permit, right of access, license, contract or agreement."

It is apparent that the Hotel Occupancy Tax is not limited to sleeping rooms, but is collectible on the price charged for any lease, concession, right of access, license, contract, or agreement for any room or space in a hotel.

Question No. 2: If the tax is collectible upon other than sleeping rooms, is it collectible is situations where a hotel owns or has control of a building or space located separate and apart from the hotel itself, but which on occasion may be used for certain functions by people, including guests of the hotel?

Answer:  The term "hotel" means any building or buildings in which the public may, for a consideration, obtain sleeping accommodations.  Art. 23.01(a), H.B. 11.  Such tax is to be levied upon the cost of occupancy of any "room", as defined above.  Art. 23.02, H.B. 11.  "Occupancy" means the use or possession, or the right to the use or possession, of any room or rooms in a hotel.  Art. 23.01(c), H.B. 11. It is clear that the tax is not collectible on rentals or charges imposed on buildings owned by a hotel, which are physically separate from the hotel and which are not used for the purpose of letting sleeping accommodations.

Question No. 3:  In instances where a hotel extends credit to a guest, is the tax due when occupancy occurs, or when the account is actually paid?

Question No. 3A:  Is the tax due in cases where guests leave without paying their bill, thereby becoming what is known in the trade as "skippers"?

Answer:  The tax is levied upon the consideration paid by the occupant.  Art. 23.02, H.B. 11.  The tax is to be collected by the hotel.  Art. 23.03, H.B. 11.  Article 23.04 provides:

> "On the last day of the month following each quarterly period, every person required in Article 23.03 hereof to collect the tax imposed herein shall file a report with the Comptroller showing consideration paid for all room occupancies in the preceding quarter, the amount of tax collected on such occupancies, and any other information as the Comptroller may reasonably require.  Such person shall pay the tax due on such occupancies at the time of filing such report."
> (Emphasis added.)

The foregoing language clearly indicates that the tax is due from the hotel only in cases where the consideration has been collected from the occupant.  Consequently where a person is given a complimentary room or "skips" without paying, no tax is due, since no consideration has been paid.[1]  For the same reason the hotel need not remit taxes due on accounts where credit has been extended until the cost of occupancy has actually been paid by the occupant.

---

[1] It should be noted that anytime a "skipper" is brought to heel and made to pay, the tax is due from the hotel.

Question No. 4:  How is the tax collectible upon the "American Plan," i.e., the system under which a guest pays lump-sum for meals and lodging?

Answer:  The tax is upon the cost of occupancy and not upon the cost of meals.  Art. 23.01(b), H.B. 11. Consequently, such cost must be segregated in order to calculate the tax upon the cost of occupancy.[2]

Question No. 5: .Is the tax to be paid upon the rentals of equipment such as television sets and radio sets that are not an integral part of the furnishings of the room? Is it levied in situations where air conditioners are rented wholly separate and apart from the room rental?

Answer:  Again, the tax is upon the cost of occupancy. Where radios, TV sets or air conditioners are rented separate and apart from the room, and a separate charge made therefor, the tax does not apply.  However, in situations where no separate charge is made and the air conditioner, radio or TV set is furnished with the room, the tax is levied on the total cost of occupancy.

Question No. 6:  In situations where a lessee occupies a space under conditions that the term of his occupancy is not known at the time he takes possession, is the tax applicable for the first 30 days of occupancy even though the lessee remains in possession for more than 30 days?

Answere:  The hotel occupancy tax is not imposed upon a "permanent resident."  The term "permanent resident" is defined by the act as:

". . .any occupant who has or shall have
the right to occupancy of any room or rooms
in the hotel for at least 30 consecutive days
during the current calendar year or preceding
year."

---

[2] In this connection we note that the Department of Revenue of the state of Pennsylvania has adopted a regulation whereby a certain percentage of the total cost is allocated to meals. This is a procedure  your department may deem expedient in administering this particular aspect of the Act.

A person is a permanent resident if he enters possession under a lease having a term of at least 30 or more consecutive days, since he has the right to occupancy for such term. However, in instances where the original lease term or commitment is less than 30 days, the occupant does not achieve the status of a permanent resident until he has actually occupied the premises for 30 consecutive days. Therefore, in such situations, the person would owe the tax for the first 30 days; thereafter, he would be relieved of the tax because of his status as a permanent resident.

Your last question is directed to whether or not the tax applies to rooms rented from hotels by the Federal Government when moving draftees to reception centers.

It is well settled that in the absence of express federal permission the State cannot levy an excise or use tax upon an instrumentality of the Federal Government. Attorney General's Opinions No. WW-598 and WW-582. Therefore, under the facts stated, you are advised that the tax is not applicable.[3]

## SUMMARY

The character of accommodations taxed under the new hotel occupancy tax is not limited to sleeping rooms, but is not collectible on buildings physically separated from the hotel not used for letting sleeping accommodations.

The tax is due upon the consideration actually paid for occupancy and at the time of payment thereof.

The tax is not due upon food served pursuant to the "American Plan," nor is it due upon radios, television sets or air conditioners rented separate and apart from a room and for which a separate charge is made.

A person is a "permanent resident" if he enters occupancy under a lease the duration of which is at least 30 consecutive days, or if he has actually occupied a room or space for at least 30 consecutive days.

_____
[3] This opinion is limited to instances where rooms are actually rented and used by or on behalf of a Federal instrumentality in the course of its official functions.

The tax does not apply to rooms rented to the Federal Government in the course of moving draftees to reception centers.

Yours very truly,

WILL WILSON
Attorney General of Texas

By Jack N. Price
Jack N. Price
Assistant

JNP:cm

APPROVED:

OPINION COMMITTEE:
Geo. P. Blackburn, Chairman

John C. Steinberger
Robert T. Lewis
Ernest John Flowers
Milton J. Richardson

REVIEWED FOR THE ATTORNEY GENERAL

By: W. V. GEPPERT